IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RICHARD BARKER FREENEY, ) <br> AIS #270785, ) <br> ) <br>     Plaintiff, ) <br> ) <br> ) <br>     v. ) <br> ) <br> ) <br> DOCTOR HEMPBURG, ) <br> ) <br>     Defendant. ) | CIVIL ACTION NO. 2:10-CV-343-ID <br> [WO] |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Richard Barker Freeney ["Freeney"], a state inmate and frequent litigant before this court. In this complaint, Freeney asserts that Dr. Hempburg, whose proper name is Dr. Eric B. Hedberg, a physician employed at the Montgomery County Detention Facility, denied him adequate treatment for a psychiatric condition during the first thee months of this year.[1]  Freeney seeks declaratory relief and monetary damages. *Plaintiff's Complaint - Court Doc. No. 1* at 4.

The defendant filed a special report, answer and supporting evidentiary materials addressing Freeney's claim for relief. Pursuant to the orders entered herein, the court deems it appropriate to treat this report as a motion for summary judgment. *Order of June 7, 2010 - Court Doc. No. 9.* Thus, this case is now pending on the defendant's motion for summary judgment. Upon

---

[1] The defendant advises that his correct name is Eric B. Hedberg. *Defendant's Exhibit 1 (Affidavit of Eric B. Hedberg, M. D.) - Court Doc. No. 8-1* at 1. In the interest of clarity, the court will henceforth reference the defendant by his correct name.

consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendant's motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendant has met his evidentiary burden and demonstrated the absence of any genuine

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

issue of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison [medical] authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendant's properly supported motion for summary judgment, Freeney is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material

fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere

existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Freeney fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II.  DISCUSSION

### A.  Suit Against Defendant in his Official Capacity

To the extent Freeney sues defendant Hedberg in his official capacity, Hedberg is immune from monetary damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). Under all facets of Alabama law, a county sheriff, his jailers and medical staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendant is a state official entitled to Eleventh Amendment immunity when sued in his official capacity. Thus, defendant Hedberg is entitled to absolute immunity from the plaintiff's claims for monetary damages asserted against him in his

official capacity.

### B. Medical Treatment for Psychiatric Condition - Deliberate Indifference[3]

Freeney complains defendant Hedberg failed to provide him adequate treatment for his purported suicidal tendencies. *Plaintiff's Complaint - Court Doc. No. 1* at 2. Defendant Hedberg adamantly denies he acted with deliberate indifference to Freeney's alleged psychosis and, instead, maintains he provided Freeney with appropriate treatment.

To prevail on a constitutional claim concerning an alleged denial of adequate medical/mental health treatment, an inmate must, at a minimum, show that those responsible for providing the treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, jail medical personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). When

---

[3] It appears from the pleadings filed by the parties that the alleged denial of medical treatment which forms the basis of the instant complaint occurred during Freeney's incarceration as a convicted prisoner. Nevertheless, regardless of Freeney's status in the jail as either a pretrial detainee or convicted felon, the applicable standard of review remains the same. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

seeking relief based on deliberate indifference of responsible officials, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference

>  in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact that prison inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2001).  Thus, for Freeney to survive summary judgment on his deliberate indifference claim against the defendant, he is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th

Cir. 1995).

The medical records filed herein demonstrate that during Freeney's confinement in the Montgomery County Detention Facility medical personnel, including the individual named as a defendant, consistently evaluated Freeney for his reported psychosis and provided treatment in accordance with their professional assessment of his condition. *Defendant's Exhibit 2 (Montgomery County Detention Facility  Medical File of Richard Barker Freeney) - Court Doc. No. 8-2* at 1-63. The undisputed evidentiary materials before the court further demonstrate that the jail's medical staff routinely examined Freeney, thoroughly evaluated his complaints, continuously monitored his progress, prescribed various medications and provided treatment for his mental health condition in accordance with their professional judgment. *Id*.; *Defendant's Exhibit 1 (Affidavit of Eric B. Hedberg, M.D.) - Court Doc. No. 8-1* at 1-3.

The affidavit filed by defendant Hedberg delineates the relevant treatment provided to Freeney as follows:

> I have reviewed the complaint in this matter and made a careful review of the medical records with regard to the plaintiff, Richard Freeney.  The facts set forth in this affidavit are based upon my review of the medical records, my conversations with other medical personnel at the Montgomery County Detention Facility, and my independent recollection.  Although the complaint is extremely vague, it appears that Mr. Freeney is complaining of a failure to prescribe medication to treat a psychiatric condition....
>
> Mr. Freeney was first seen on 2/15/10 by Jennifer Smith, R.N.  He claimed to be having auditory hallucinations of voices telling him to cut himself.  He also claimed to see "little devils with black horns on their heads."  He further stated that he had a mental breakdown and lost everything.  Mr. Freeney was arrested for cannabis possession.  During the screening he endorsed symptoms of depression.  Mr. Freeney wanted to stay in the suicide unit rather than go back to the general population. Nurse Smith indicated that the manner in which he presented his symptoms were not

convincing and she did not believe he was being forthright.

One of the things we look for when we suspect that someone is malingering is a consistency or lack of consistency in their story and claimed symptoms. Patients who are psychotic have no difficulty remembering vivid details of their auditory and visual hallucinations. They are very consistent with their story and delusions.

When psychotic patients describe their symptoms, there is quality about the descriptions that an experienced mental health practitioner can recognize that convinces the practitioner the psychotic patient genuinely believes the psychotic thoughts, delusions, and hallucinations.

Psychotic patients do not understand or believe rational challenges to the psychotic thoughts. They are just unable to be rational or organized in their thinking process. It is obvious that they are not making things up or acting. The hallucinations and delusions are very real to them. There is an emotional quality in the psychotic patient that is a genuine response to their irrational, distorted thoughts.

Mr. Freeney was seen by me on 2/15/10. Mr. Freeney claimed he heard strange voices but could not think of what the voices said. He did not seem to recall what he had told Nurse Smith. There was a long pause as he was obviously trying to think of something to say about the voices. He then stated that the voices said "bad stuff, like if you go back upstairs (i.e. to general population) they will make you cut yourself." Mr. Freeney tried to demonstrate other symptoms that could have been psychiatric, but were very unconvincing. He stated that he could not remember his birthday, what year it was, or how old he was. Psychotic patients do not have problems recalling basic known facts such as age, birth date, etc. He claimed that his psychotic symptoms started at age 4 (children do not begin to formulate long term memory until about age 5 and that age group do not have psychotic symptoms) and then stated he believed he should be admitted to Greil Psychiatric Hospital. Mr. Freeney was not convincing when he described his symptoms. He did not have the demeanor or voice inflections that would be consistent with patients experiencing true psychotic symptoms. I was fairly sure he was malingering. Additionally, his thought process, sentence construction and train of thought were much too goal directed and organized to be consistent with a thought (psychotic) disorder. Mr. Freeney stated he was at Greil and that should demonstrate he was crazy. He signed a release of information to obtain records from Greil Hospital. I did not prescribe any medications pending what I learned from the Greil Hospital record.

When Nurse Smith asked the patient to sign a no harm contract, Mr. Freeney yelled "F--- you bitch, I ain't signing nothing." A psychotic patient may refuse to sign

something like this, but the reason would most likely be a paranoid idea, such as by signing, the no harm contract would be used against them. Mr. Freeney's response was not psychotic but was aggressive, mean and condescending.

Many inmates will try to get transferred to a psychiatric hospital because they believe that they can get their charges dropped if they are mentally ill. It is referred to as "playing the mental health card." I reviewed the medical records of Mr. Freeney from his 7/11/03 admission to Greil Memorial Psychiatric Hospital until his release [on] 7/25/03. No psychotic symptoms were identified. The discharge diagnoses were: Axis I-Mood Disorder, Not Otherwise Specified Cannabis abuse; Axis II-Personality Disorder, Not Otherwise Specified.

Mood disorder, NOS is a diagnosis that is made when there are some mild mood disorder symptoms, but not enough symptoms to make a diagnosis. For example, sad and irritable for a few days. Personality Disorder, NOS is a diagnosis used when there are symptoms of more than one personality disorder in the same patient. The most common is "Cluster B traits" that include symptoms of Narcissistic, Antisocial (sociopath), Borderline, and Histrionic personality disorders. For Mr. Freeney, cluster B symptoms existed.

Mr. Freeney was seen again [by] me on 3/25/10. The patient became loud and disruptive when I came on the medical holding unit. I told him of the diagnoses made at Greil Hospital during his admission and explained that no psychotic symptoms were observed. I then asked what psychiatric symptoms he was having and he stated, "I'm f---ed up". He claimed he could not control his mind and kept demanding medications. He did not talk about the psychotic symptoms he had previously claimed. I attempted to tell him about his personality disorder symptoms as well as substance dependence. Mr. Freeney became verbally abusive toward me. He yelled and cursed at me such that I was unable to continue the interview.

Inmates residing in medical holding are assigned a single cell where they stay during the time they are in this area. A more trusted inmate is assigned to the medical holding area during the day to assist the correctional officers when asked. The more trusted inmate is not in a cell and is free to walk the cells of the inmates in medical holding. On 3/25/10 the more trusted inmate had a first name of "Dorsey". When asked how Mr. Freeney's behavior had been while in medical holding, Dorsey stated that Mr. Freeney was usually quiet and did not give people any trouble. He further stated that Mr. Freeney began yelling, cussing and demanding medications when he realized that I was on the medical unit. This would be another indicator of contrived behavior consistent with malingering and drug seeking. Again I did not prescribe medications.

> My diagnoses on 3/25/10:
> Axis I     Malingering V65.2
>              Polysubstance Dependence 304.8
> Axis II    Personality Disorder with Narcissistic and Antisocial Traits 30.9
>              (Antisocial Personality disorder is a diagnosis of what lay people
>              would call sociopathic behavior.)
>
> On 3/31/10 Jennifer Smith, RN saw Mr. Freeney again. At that time he denied hearing any voices or seeing things. He did not complain of any psychotic symptoms, but stated "Today I'm joyful, but tomorrow I may be suicidal again." This statement is inconsistent with psychiatric mood disorders. If you are joyful one day, it is very unlikely to be suicidal the next. A manic episode must last 4-7 days nonstop and to make the diagnosis of depression, the symptoms must last two weeks. Additionally, if he had truly been psychotic on 2/15/10 & 3/25/10 and had not received antipsychotic medications, he would have still been psychotic on 3/31/10. Malingering is defined by the Diagnostic & Statistical Manual of Mental Disorders (DSM-IV) as the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs. The logical conclusion is that Mr. Freeney was not psychotic on 2/15/10 and 3/25/10 as he had claimed. He was malingering.

*Defendant's Exhibit 1 (Affidavit of Eric B. Hedberg) - Court Doc. No. 8-1 at 1-3.*

Under the circumstances of this case, it is clear that the course of treatment undertaken by defendant Hedberg was neither grossly incompetent nor inadequate. Initially, the court finds that Freeney has failed to establish an objectively serious need. In addition, although Freeney asserts he should have been provided a different treatment regimen, i.e., the provision of psychiatric medications and confinement in the suicide unit, this assertion fails to establish deliberate indifference. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545 (whether medical personnel "should have employed additional ... forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth

Amendment."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment). It is undisputed that Freeney received treatment as dictated by objective evaluations of his condition.

Based on well settled law referenced herein, Freeney's mere desire for a different mode of treatment does not amount to deliberate indifference. Freeney has failed to present any evidence which indicates Dr. Hedberg had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Freeney, that Dr. Hedberg actually drew this inference and thereafter ignored the risk. The record is devoid of evidence, significantly probative or otherwise, showing that defendant Hedberg acted with deliberate indifference to Freeney's mental health. Summary judgment is therefore due to be granted in favor of the defendant.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendant's motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendant.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before July 28, 2010 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's

Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 9th day of July, 2010.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE